UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Commerce Point Capital, Inc.,<br><br>                              Plaintiff,<br><br>v.<br><br>First Data Corporation, et al.,<br><br>                              Defendants. | Case No.:  19-cv-556-W (LL)<br><br>**ORDER:**<br><br>**(1) DENYING FDC'S MOTION TO DISMISS [DOC. 17];**<br><br>**(2) GRANTING IN PART AND DENYING IN PART FDMS'S MOTION TO DISMISS [DOC. 18]; AND**<br><br>**(3) DENYING WELLS FARGO'S MOTION TO DISMISS [DOC. 21]** |

Pending before the Court are Defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*FDC MTD* [Doc. 17]; *FDMS MTD* [Doc. 18]; *Wells Fargo MTD* [Doc. 21].)  The Court decides the matters on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** FDC's motion [Doc. 17], **GRANTS IN PART** and **DENIES IN PART** FDMS's Motion [Doc. 18], and **DENIES** Wells Fargo's motion [Doc. 21].

# I.  BACKGROUND

Defendant First Data Merchant Services ("FDMS") is a corporation under the parent company Defendant First Data Corporation ("FDC") and is one of the "world's largest" payment processing companies.  (*Second Amended Complaint* ("*SAC"*) [Doc. 15] ¶¶ 2, 11.)  FDMS contracts with financial institutions, including Defendant Wells Fargo, to underwrite transactions processed through FDMS.  (*Id.* ¶ 13.)  FDMS and Wells Fargo contract with independent sales organizations ("ISO"), including Plaintiff Commerce Point Capital, Inc. ("CPC"), to serve as brokers for FDMS to merchants for payment processing services.  (*Id.* ¶ 14.)  In exchange for brokerage services, FDMS shares a portion of its profits from merchants' use of the payment processing services.  (*Id.*)  FDMS gains revenue by collecting a percentage of the payments processed by the merchants and by charging additional fees.  (*Id.* ¶ 12.)

On July 1, 2006, CPC and FDMS entered into an agreement ("the agreement"). (*Id.* ¶ 20; Ex. A.)  The agreement instituted a relationship between CPC, FDMS, BancorpSouth Bank, and, later, Wells Fargo.  (*Id.* Ex. A, at 2.)[1]  Under section 10(b) of the agreement, "[FDMS] may increase any of the fees, costs and charges set forth in Schedule A . . . by an amount not to exceed the percentage increase in the Consumer Price Index ("CPI") during the period described below."  (*Id.* at 9)  Additionally, the agreement allowed FDMS to "pass through to [CPC] increases in the non-controllable fees, costs and charges set forth in Schedule A of the agreement . . . to reflect any increases in such fees, costs and charges to [FDMS], upon ten (10) days prior written notice to [CPC]."  (*Id.*)  The agreement noted that in the event of a fee increase FDMS "shall provide reasonable assistance" to pass such fee increases through to merchants. (*Id.*)

In July 2018, CPC filed its initial complaint in California state court alleging

---

[1] All Exhibit page numbers referenced by the Court refer to the page numbers provided in the lower right corner of the Exhibit.

breach of contract and various tort claims. CPC's numerous allegations include mislabeling and improperly applying fees, charging for nonexistent accounts, failing to provide promised services, and interfering with CPC's business relationships.

Defendants removed the case from state court on March 26, 2019. (*See Notice of Removal* [Doc. 1].) On April 2, 2019, FDMS filed two motions to dismiss. Both motions were denied as moot in light of CPC filing an amended complaint. CPC subsequently filed a second amended complaint. In response to CPC's SAC, Defendants filed the instant three motions to dismiss. (*FDC MTD* [Doc. 17]; *FDMS MTD* [Doc. 18]; *Wells Fargo MTD* [Doc. 21].)

## II. LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

Well-pleaded allegations in the complaint are assumed true, but a court is not

required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Leave to amend should be freely granted when justice so requires.  See Fed. R. Civ. P. 15(a).  However, denial of leave to amend is appropriate when such leave would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996); Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997).

## III.  DISCUSSION

### A.  Choice of Law

The parties dispute the scope and applicability of the choice of law clause ("the clause") contained in the 2006 agreement.  The clause states, "[t]his [a]greement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its conflict of law principles."  (SAC Ex. A, at 17.)

CPC argues that pursuant to California's choice of law principles, the scope of the clause is to be determined by New York law.  (Pl. Brief [Doc. 30] at 2–3.)  CPC further argues that New York law would interpret the clause narrowly—to only include contractual claims—and as such, California law would apply to non-contractual claims.  (Id.)  Defendants oppose, arguing that because the clause expressly excluded New York's conflicts of law principles, this Court must apply California's conflict-of-law principles to determine the scope of the choice of law provision.  (Def. Brief [Doc. 29] at 3.)  Defendants contend that under California law, the clause is interpreted broadly, encompassing all causes of action arising from or related to their contract.  (Id.)  Defendants then conduct an analysis under Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459 (1992), concluding that New York law should apply to all of CPC's claims.  (Id. at 4.)  Defendants are incorrect.

**1.    The Scope of the Choice of Law Clause**

Under California law, the scope of a choice of law clause is governed by the parties' choice of law contained therein, which here is New York.  See Nedlloyd Lines B.V., 3 Cal. 4th at 495 n. 7 (noting that "the question of whether that [choice of law] clause is ambiguous as to its scope . . . is a question of contract interpretation that in the normal course should be determined pursuant to Hong Kong law [the choice of law contained in the clause]").[2]

"Under New York law, in order for a choice of law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties."  Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) (citing Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309–10 (2d Cir. 1994)).  In JMP Sec. LLP v. Altair Nanotechnologies, Inc., 880 F. Supp. 2d 1029 (2012), the choice of law clause identified New York law.[3]  Id. at 1036.  The court determined, under Nedlloyd, that New York law would be used to determine the scope of the clause.  Id.  There, the court held that New York law would exclude any claims "arising from tortious breaches of contractual duties."  Id.  The plaintiff's "extra contractual claims," including promissory estoppel, fraud, and negligent misrepresentation were extra-contractual and therefore covered by state law other than New York.[4]  Id.; see also Knieriemen v. Bache Halsey Stuart Shields, 427 N.Y.S.2d 10, 12–13 (1980) (holding "[t]hat the parties agreed that their contract

---

[2] The California Supreme Court in Nedlloyd applied California law to determine the clause's scope because the court did not have Hong Kong law before it.  See Nedlloyd Lines B.V., 3 Cal. 4th at 495 n. 7.  Here, however, this Court can readily examine New York law.

[3] The clause said "The Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any princples of conflicts of law."  JMP Sec. LLP, 880 F. Supp. 2d at 1033.

[4] The court then addressed what state law would apply to the non-contractual claims, concluding California law would apply because, "[i]n the absence of an effective choice of law agreement, California choice of law rules permit a court to apply the decisional rules of its forum state 'unless a party litigant timely invokes the law of a foreign state.'"  JMP Sec. LLP, 880 F. Supp. 2d at 1037; Restatement (Second) of Conflict of Laws § 187(2).

should be governed by an expressed procedure does not bind them as to causes of action sounding in tort, and, as to the tort causes of action, there is no reason why all must be resolved by reference to the law of the same jurisdiction")[5]; Champlain Enter., Inc. v. United States, 945 F. Supp. 468, 471 (N.D.N.Y. 1996) ("Under New York law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dictate the law that will govern non-contract based claims").

Here, the clause was drafted narrowly. In fact, it is almost identical the clause in JMP Sec. LLP, with one minor and ultimately immaterial exception.[6] The clearest reference to the agreement's scope is the phrase "[t]his agreement." (*SAC* Ex. A, at 156.) As such, the clause here should be narrowly interpreted to include contractual claims and exclude non-contractual claims. This narrow interpretation does not contravene the drafting party's intention to exclude a New York conflict of law analysis because this Court is not giving any effect to New York conflict of law principles. What is more, the need for uniformity as it relates to contractual disputes and New York's interest in having commercial transactions governed by its law is satisfied. The contractual disputes will be governed entirely by New York law, subject only to the Nedlloyd analysis.

### 2. The Enforceability of the Choice of Law Clause

Under Nedlloyd, a court must first determine whether "California would 'be the state of the applicable law in absence of an effective choice of law by the parties.'" Nedlloyd, 3 Cal. 4th at 459 (citing Restatment (Second) of Conflict of Laws, section 187(2)). Here, California law applies to extra-contractual claims not covered by the

---

[5] The clause in Knieriemen said "[t]his contract shall be governed by the laws of the State of New York." Knieriemen, 427 N.Y.S.2d at 13.

[6] The clause in JMP Sec. LLP said: "without giving effect to *any* principles of conflicts of law." JMP Sec. LLP, 880 F. Supp. 2d at 1033 (emphasis added). The clause here says: "without giving effect to *its* [New York's] conflicts of law principles." Whether this Court ignores *any* conflicts of laws principles or just New York's conflicts of law principles, the result is the same: ignore New York's conflicts of law principles. The minor difference in the clauses has no impact on the relevant analysis.

clause because California is the forum state, the alleged injury was sustained in San Diego, and the alleged acts or omissions that caused the injury occurred in San Diego. (*SAC* ¶ 9.)

"California follows the approach set out in the Restatement (Second) of Conflicts of Laws § 187 to determine the law that applies to a contract with a choice-of-law clause." First Intercontinental Bank v. Ahn, 798 F.3d 1149, 1153 (9th Cir. 2015); see also Nedlloyd, 3 Cal. 4th at 466. The Restatement first considers whether the chosen state has a "substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law." Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001).

If there is either a substantial relationship between the transaction or parties and the chosen state or there is any reasonable basis for applying the chosen state's law, the court "then determines whether the relevant portion of the chosen state's law is contrary to fundamental policy in California law." First Intercontinental Bank, 798 F.3d at 1153 (quoting Washington Mut. Bank, FA, 24 Cal. 4th at 916). If there is a conflict, the court then must ask "whether California has a materially greater interest than the chosen state." Id. (citation omitted). Then, if California has a materially greater interest than the chosen state in the dispute, California law is applied to those issues. See First Intercontinental Bank, 798 F.3d at 1153–54.

Here, both parties agree there is a substantial relationship between the parties, the transaction, and New York because "FDMS (the contracting party) had substantial contacts with the state of New York during all times relevant to this litigation; FDMS entered into agreements with ISOs (such as CPC) in New York and performed a substantial amount of its payment-processing services from New York." (*Def. Brief* at 5.) CPC does not contest this: "New York is the chosen state and it is where performance by one of the parties is likely to take place." (*Pl. Brief* at 9.)

Additionally, both parties agree that there is a reasonable basis for applying New York as the choice of law due to the need for uniformity and familiarity of law. (*Def.*

*Brief* at 4; *Pl. Brief* at 9.)  The Court agrees that there is both a substantial relationship between the parties and New York and a reasonable basis for applying the laws of New York to claims covered by the clause.

The next issue, then, is whether an application of New York law to the contractual claims would conflict with fundamental California policy.  See First Intercontinental Bank, 798 F.3d at 1153.  In the absence of such conflict, New York law would apply. Washington Mut. Bank, FA, 24 Cal. 4th at 917.  If a conflict is present, the Court must determine whether California has a materially greater interest than New York in the dispute.  Id.  Because a conflict of New York law and California law will depend on each claim involved in the dispute, the Court will address the claims independently below.

The Court will address each claim and determine, under New York law, whether it is contractual or non-contractual.  Contractual claims will be controlled by New York law unless they are contrary to fundamental California policy and California has a materially greater interest than New York in litigating the dispute.

## B.  Breach of Contract

Breach of contract is clearly a contractual claim.  Importantly, both parties agree that the parties and the transaction have a substantial relationship to New York and that there is a reasonable basis for applying New York law.  (*See Def. Brief* at 5; *Pl. Brief* at 9.)  Moreover, this Court perceives no fundamental policy of California requiring the application of California law to CPC's breach of contract claim.[7]  As such, New York law will apply to CPC's breach of contract claim.

The elements of a cause of action for breach of contract under New York law are: "(1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff,

---

[7] California generally seeks to enforce freely negotiated choice of law clauses.  See Washington Mut. Bank, FA, 24 Cal. 4th at 906.  Should the proponent of the clause demonstrate there is a substantial relationship between New York and the parties or transaction or that there is a reasonable basis for enforcing the clause, the clause will generally be enforced absent any showing to the contrary by the opponent of the clause.  Id. at 917 (quoting Nedlloyd Lines B.V., 3 Cal. 4th at 462).  Here, neither party opposes the application of the clause to contractual claims.

19-cv-556-W (LL)

(3) defendant's failure to perform, (4) resulting in damage." U.S. Nonwovens Corp. v. Pack Line Corp., 4 N.Y.S.3d 868, 871–72 (2015). The statute of limitations for a breach of contract under New York law is six years. N.Y. C.P.L.R § 213(2).

CPC has alleged sufficient facts that, accepted as true, could constitute a valid breach of contract claim. While it is arguable that the agreement and its amendments allowed FDMS to bill CPC for many of the fees CPC contests, a few examples, construed in a light favorable to CPC, allege a breach of contract that rises above mere speculation. For example, CPC alleges that FDMS charged CPC for merchant accounts that it repeatedly requested be closed. (*Id.* ¶ 83.) CPC complained to FDMS about the charges, but alleges that FDMS would stop billing for a period of time and then require CPC to send a request to remove or cancel a merchant account after CPC already requested its removal. (*Id.* ¶ 85.) Under Schedule A of the agreement FDMS charged CPC for "[e]ach account of a Merchant of [CPC] that remains on [CPC]'s master file at FDMS on the last processing day of the calendar month . . . ." (*Id.* Ex. A, at 20.) Given that FDMS controlled the master file, it appears to have been FDMS's job to remove closed merchants, the failure of which resulted in damage to CPC.

Additionally, CPC alleges that customer service procedures, which should have been completed by FDMS, were pushed onto CPC. (*Id.* ¶ 113.) Section 3 of the agreement required FDMS to provide "Merchant customer services" and "all other Back Office Services." (*Id.* Ex. A, at 6.) However, as of July 15, 2018, when merchants call FDMS customer service a message prompt gives CPC's phone number and instructs them to call CPC instead. (*Id.* ¶ 115.)

FDMS argues that the statute of limitations has expired and that CPC has waived its claim by never challenging any of FDMS's reports prior to filing this action. However, CPC alleges facts that, if true, could constitute a breach of contract at or around 2014, 2018, and 2019, which brings the claim within the appropriate statute of limitations. (*See SAC* ¶¶ 48, 115, 124, 125.) The doctrine of waiver is likewise inapplicable because CPC alleges that FDMS also breached the contract by purposefully

creating deceptive reports, making it impossible for CPC to discover the extent of its damages. (*See id.* ¶¶ 15, 22, 55, 75, 97.) The motions to dismiss the breach of contract claim are **DENIED**.[8]

### C. Breach of the Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing is imposed on all contracting parties and supplements express contractual provisions. See Cobb v. Ironwood Country Club, 223 Cal. App. 4th 960, 965–66 (2015). As such, this is a contractual claim. Because both parties agree that New York law should govern, there is a sufficient relationship and reasonable basis for applying New York law, and there is no perceived threat to fundamental California policy in applying New York law, New York law shall govern this claim.

"Causes of action for breach of contract and breach of the covenant of good faith and fair dealing may stand together where the defendant engages in conduct that injures or frustrates the other party's right to receive the fruits of the contractual bargain." MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC, 927 N.Y.S.2d 517, 534 (2011) (citing Frydman v. Credit Suisse First Boston Corp., 708 N.Y.S.2d 77, 80 (2000)). The covenant is breached when a party to a contract engages in conduct that would deprive the other party the right to receive the benefits of their agreement, even if that conduct is not expressly forbidden by that contract. J. Kokolakis Contracting Corp. v. Evolution Piping Corp., 998 N.Y.S.2d 788, 791 (2014). Breach of implied covenant is actionable, generally, where the conduct alleged is independent of the express terms of the contract and the recovery is not intertwined with damages resulting from breach of contract. Id.

CPC has alleged sufficient facts to plausibly argue that FDMS attempted to frustrate CPC's ability to receive the fruits of its bargain. For example, CPC claims that

---

[8] Because both FDC and Wells Fargo's separate motions to dismiss incorporate all arguments set forth in the FDMS motion by reference, the Court will rule on all three for each claim.

19-cv-556-W (LL)

FDMS created an independent sales force which used CPC's confidential information to solicit CPC merchants to work directly with FDMS, thereby frustrating CPC's ability to act as a broker to those merchants and reap the financial benefits. (*See SAC* ¶¶ 119–123.) Contrary to FDMS's contention, this appears to be a duty separate and apart from contractual duties and not merely duplicative of the breach of contract claim. The motions to dismiss the breach of the covenant of good faith and fair dealing claim are **DENIED.**

### D.  <u>Unjust Enrichment</u>

Under New York law, the existence of a valid and enforceable contract precludes recovery on a theory of unjust enrichment. <u>Goldstein v. CIBC World Mkt. Corp.</u>, 776 N.Y.S.2d 12, 14 (2004). "[A]n unjust enrichment claim cannot be a contract claim." <u>Robert M. Schneider, M.D., P.C. v. Licciardi</u>, 108 N.Y.S.3d 720, 726 (2019). As such, California law will control this claim.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" <u>Astiana v. Hain Celestial Group, Inc.</u>, 783 F.3d 753, 762 (9th Cir. 2015) (citing <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 108 (2010)). "As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract." <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1370 (2010). Unjust enrichment must be plead along with a quasi-contract cause of action, such as alleging that the contract was void or rescinded. <u>See id.</u> at 1370. A plaintiff may assert alternative theories, even if those theories appear inconsistent. <u>Klevin v. Chevron U.S.A., Inc.</u>, 202 Cal. App. 4th 1342, 1388 (2012). CPC is permitted to allege recovery under both a contract and quasi-contract theory, the latter under which an unjust enrichment recovery could lie. However, CPC fails to properly allege a quasi-contract theory. To the contrary, CPC maintians that there is a valid, enforceable contract. (*SAC* ¶¶ 128, 147.) As such, CPC's request for recovery under a theory of unjust enrichment is dismissed. The motions are **GRANTED.**

**E.   Conversion, Fraudulent Misrepresentation, Negligent Misrepresentation**

FDMS argues that "[i]t is a well-established principle of New York law that a simple breach of contract is not to be considered a tort unless a legal duty indepent of the contract itself is violated." (*FDMS MTD* at 12:24–26.)  However, given that these tort claims involve duties distinct from any contractual obligation, California law governs these claims and New York law is inapplicable.[9]  Alternative pleadings are proper under Rule 8 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Thus, for example, it may have been a breach of contract for FDMS to charge CPC for merchant accounts it repeatedly asked FDMS to close.  (*SAC* ¶ 83.)  Alternatively, it may be that the agreement did not require FDMS to close the accounts.  If so, it may also be true that FDMS retained an independent legal duty not to retain ownership of money it knew resulted from closed accounts.  Thus a plausible claim for conversion remains in the alternative to the breach of contract claim.  For the same reason, a claim for fraudulent or negligent misrepresentations remains in the alternative if indeed FDMS represented that it would not form a competing sales force to interfere with CPC's business relationship with merchants.  (*See SAC* ¶ 188(m).)

FDMS argues further that CPC failed to plead its fraudulent and negligent misrepresentation claims with particularity as required under Federal Rule of Civil Procedure 9(b).  (*FDMS MTD* at 14:1–4.)  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  CPC alleges that beginning September of 2009, FDMS representatives Erick Nicholson and Zach Casey made 22 factual misrepresentations.  (*SAC* ¶ 188.)  This is a sufficient pleading of the "when," "who," and, most importantly, "what" needed to

---

[9] The Court is not ruling that California law provides otherwise, merely that the only law it has argued before it is inapplicable here.  The parties are free to take the matter up again using Calfornia law.

adequately put FDMS on notice with regards to the misrepresentation claims.  The
motions to dismiss the conversion, fraudulent misrepresentation, and negligent
representation claims are **DENIED.**

### F.  <u>Conspiracy</u>

A civil conspiracy claim is not an independent claim in New York—the
claim must be connected to an underlying tort.  <u>See</u> <u>Williams v. Williams</u>, 53 N.Y.S.3d
152, 153 (2017) (holding that "a cause of action alleging conspiracy to commit a tort
stands or falls with the underlying tort.")  In any event, the alleged breach of duty here is
independent of any promise or obligation created by the contract.  As such, a claim of
conspiracy is not a contractual claim and California law applies to CPC's conspiracy
claim.

Civil conspiracy is "a legal doctrine that imposes liability on persons who,
although not actually committing a tort themselves, share with the immediate tortfeasors
a common plan or design in its perpetration." <u>City of Industry v. City of Filmore</u>, 198
Cal. App. 4th 191, 211–12 (2011).  The elements are: "(1) the formation of a group of
two or more persons who agreed to a common plan or design to commit a tortious act; (2)
a wrongful act committed pursuant to the agreement; and (3) resulting damages."  <u>Id.</u>

FDMS's sole argument is that the conspiracy claim necessarily fails because the
predicate torts also fail.  (*FDMS MTD* 20:22–21:11.)  Given the remainder of numerous
tort claims, the motions to dismiss the conspiracy claim are **DENIED**.

### G.  <u>For An Accounting</u>

Under New York law, the right to an accounting requires a confidential or
fiduciary relationship, not a contractual one.  <u>See</u> <u>Marine Midland Bank, N.A. v. Yoruk</u>,
662 N.Y.S.2d 957, 958  (1997) (dismissing a claim for an accounting because the legal
relationship between the parties was contractual, not fiduciary).  As such, the claim does
not arise from a contractual obligation and therefore, California law controls.

"A cause of action for accounting requires a showing of a relationship between the plaintiff and the defendant, such as a fiduciary relationship, that requires an accounting or a showing that the accounts are so complicated they cannot be determined through an ordinary action at law." <u>Fleet v. Bank of America N.A.</u>, 229 Cal. App. 4th 1403, 1413 (2014).  Thus, a fiduciary relationship is not required to state a cause of action in California.  <u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th 156, 179 (2009).  However, "[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." <u>Id.</u>

CPC alleges various losses incurred by Defendants' actions.  Many of these losses involve complicated fee structures.  Additionally, CPC alleges that the monthly compensation reports that otherwise may shed light on their exact losses consisted of "hundreds of thousands of pages of data" with "technology required to access the reports," making it incredibly difficult to discern the fees.  (*SAC* ¶ 15.)  Construed as true, deceptive reporting practices and complex fee structures over extensive periods of time would make CPC's recovery difficult or impossible to discern with any certainty.  As such, CPC has sufficiently alleged a cause of action for an accounting.  The motions to dismiss the accounting request are **DENIED.**

### H.    Donnelly and Cartwright Acts

The Donnelly and Cartwright Acts are New York and California's versions of the Sherman Antitrust act, respectively.  Antitrust laws and their enforcement do not require a contractual relationship.  Therefore, this claim is controlled by California law and the Cartwright Act will control.

A violation of the Cartwright act requires "a combination of capital, skill or acts by two or more persons" that seeks an anticompetitive end.  <u>See</u> Cal. Bus. & Prof. Code §16720.  To state a claim under the Cartwright Act, the complaint must allege (1) the formation and operation of a conspiracy; (2) a wrongful act done pursuant to the conspiracy; and (3) damage proximately caused by those wrongful acts.  <u>Quelimane Co.</u>

v. Stewart Title Guar. Co., 19 Cal. 4th 26, 47, (1998).  California state courts require a high degree of particularity in pleading Cartwright Anti-trust violations.  Marsh v. Anesthesia Services Med. Group, Inc., 200 Cal. App. 4th 480, 493 (2011).

CPC has not pled a violation of the Cartwright Act with sufficient particularity.  CPC contends that FDMS attempted to monopolize the payment processing market by forcing CPC to use FDMS's point-of-sale terminal, hiding minimum fee requirements, and recalculating residuals.  (*SAC* ¶¶ 161–64.)  However, the Cartwright Act bans combinations, and CPC alleges no wrongful conduct committed by any Defendant other than FDMS.  The motions to dismiss the Cartwright Claim are **GRANTED.**

## I.    Unfair Business Practices Under California Business and Professions Code §§ 17200, 17203, 17500

FDMS's sole argument with regard to this cause of action is that it must be dismissed because New York law governs.  Although plead under California law, the Court will interpret the claims as unfair competition, injunctive relief for unfair competition, and false advertising.  (*See Pl. Brief* at 33; *see* CAL. BUS. & PROF. CODE §§17200, 17203, 17500 (West 2019)).  Under analogous New York law, such claims would not require an underlying contractual obligation.  FDMS's alleged conduct— engaging in unfair competition and deceptive adversiting—is "separate and apart from its failure to fulfill its contractual obligations."  J. Kokolakis Contracting Corp., 998 N.Y.S.2d at 790.  As such, this is not a contractual claim, California law controls, and the motions to dismiss this claim are **DENIED**.

## J.    California Civil Code §§ 1670 and 1671

An illegal contract is unenforceable.  Agam v. Gavra, 236 Cal. App. 4th 91, 112 (2015).  Recovery for the formation of an illegal contract involves a theory of duty imposed by law to avoid causing injury to others, not an obligation that flows from a contract.  See J. Kokolakis Contracting Corp., 998 N.Y.S.2d at 790.  Therefore, this claim

15

is controlled by California law.

California Civil Code section 1670 relates to disputes "arising from a construction contract with a public agency." CAL. CIV. CODE §1670. The agreement at issue is not a construction contract and no party to the contract is a public agency. CPC's claim under section 1670 fails.

Section 1671 states, "a provision in a contract liquidating damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." CAL. CIV. CODE §1671.

CPC fails to allege sufficient facts to support its contention that the liquidated damages clause should be invalidated. CPC's only mention of the liquidated damages clause in the 2006 agreement is a mere conclusory statement: "The liquidated damages clause is not a reasonable calculation of the amount of damages that FDMS and Wells Fargo would suffer. The assessment of such penalty would provide a windfall for FDMS and Wells Fargo." (*See SAC* ¶ 173.) Even construed in CPC's favor, the only allegations related to the clause are conclusory statements that fail to provide a plausible claim undermining the clause's presumptive validity. The motions to dismiss the illegal contract claim are **GRANTED.**

## K. Declaratory Relief

A request for declaratory relief is based in equity. Reid v. City of San Diego, 24 Cal. App. 5th 343, 362 (2018). As such it is controlled by California law.

Any person under a contract may bring an action for a declaration of his or her rights and duties pertaining to any question of construction or validity under a contract. CAL. CODE. CIV. PRO. § 1060. "One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 647 (2009).

At this stage, a request for declaratory relief is proper. CPC is permitted to allege alternative theories of recovery and Defendants' contention that "the cause of action . . . serves no useful purposes as there is already full and adequate remedy available to plaintiff" is unpersuasive. (*See FDMS MTD* at 22.) Under section 1060, CPC may request a declaration "whether or not further relief is or could be claimed at the time" and CPC is entitled to at least request this relief so that they may preserve their rights. CAL. CODE. CIV. PRO. § 1060. The motions to dismiss the request for declaratory relief are **DENIED.**

### L.     Breach of Fiduciary Duty

"The creation of a fiduciary duty does not depend upon the existence of an agreement or contract between the parties, but results from the relationship between the fiduciary and the beneficiary." Benfeld v. Fleming Properties, LLC., 932 N.Y.S.2d 140, 141 (2011) (quoting Barrett v. Freifeld, 883 N.Y.S.2d 305, 308 (2009)). Therefore, this claim is controlled by California law.

A breach of fiduciary duty cause of action requires: "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." IIG Wireless, Inc. v. Yi, 22 Cal. App. 5th 630, 646 (2018).

CPC alleges a fiduciary duty that arises from legal representation by FDMS. (*See SAC* ¶ 200.) It is clear, however, that neither FDMS nor Wells Fargo ever represented CPC in a legal capacity. The motions to dismiss the breach of fiduciary duty claim are **GRANTED.**

### M.     Intentional Interference with Prospective Economic Advantage

New York considers this cause of action a tort. See Ray v. Stockton, 80 N.Y.S.3d 569, 572 (2018). California law controls this claim.

Intentional interference with prospective economic advantage entails: "(1) the existence, between the plaintiff and some third party, of an economic relationship that

contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." <u>Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc.</u>, 2 Cal. 5th 505, 512 (2017). The interference must be independently wrongful, aside from its interfering character. <u>Edwards v. Arthur Andersen, LLP</u>, 44 Cal. 4th 937, 944 (2008). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." <u>Id.</u> (citing <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153–54 (2003)).

FDMS argues CPC does not allege that FDMS was motivated by anything other than normal economic self-interest, which does not rise to the requisite level of interference. (*FDMS MTD* 15:8–19.) To the contrary, CPC alleges that FDMS created a sales force and used CPC's confidential and proprietary information to interfere with CPC's contracts and business relationships. (*SAC* ¶¶ 120, 204–209.) Use of another's confidential information to interfere with their business relationships is an independently wrongful act sufficient to satisfy the third element of the tort.

FDMS also argues the SAC is insufficient because it did not identify any specific merchants or plead that those merchants would have entered into a contract with CPC had FDMS not contacted them. (*FDMS MTD* 15:20–26.) However, CPC alleges it was already in economic relationships with these merchants and presumably would have continued to be had FDMS not interfered. Further, CPC need not plead specific merchants to meet the standard of plausibility required by <u>Twombly</u> and <u>Iqbal</u>. The motions to dismiss the intentional interference with prospective opportunity claim are **DENIED**.

### N. <u>Violation of California Penal Code § 496</u>

A violation of any state's penal code is clearly not a contract claim. As such, the

claim is controlled by California law.

California Penal Code § 496 punishes the receipt of stolen property and provides a person injured by a violation to recover treble damages. Cal. Penal Code § 496(a), (c). Presumably, CPC attempts to claim theft under the California Penal code, but improperly alleges a claim of violation of receiving stolen property. CPC fails to allege any cognizable facts that state a plausible claim that Defendants received stolen property or how, in any event, Defendants' receipt of any stolen property gives rise to a claim to CPC. The motions to dismiss the violation of the California Penal Code are **GRANTED.**

## O.    Limitation of Liability

Finally, FDMS argues the agreement requires any recovery be limited to actual damages. (*FDMS MTD* at 22:23–23:15.) However, Rule 12(b)(6) only sanctions dismissal for failure to state a claim. See Fed. R. Civ. P. 12(b)(6); see also Palantir Technologies, Inc. v. Palantir. net, Inc., 2011 WL 3047327, at *3 (N.D. Cal. July 25, 2011) (explaining that "the test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand"). Because a 12(b)(6) motion to dismiss challenges the legal sufficiency of the pleadings, not the appropriateness of the relief sought, a motion to dismiss is not the proper mechanism to challenge a prayer for relief. See Oppenheimer v. Southwest Airlines Co., 2013 WL 3149483, *3 (S.D. Cal. June 17, 2013); see also Andrawes v. Flora Media, Inc., 2018 WL 1942197, *2 (C.D. Cal. March 16, 2018) ("However, 'because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6).'").

## P.    FDC

FDC argues it should be dismissed because it is not a party to any agreement with CPC. (*FDC MTD* [Doc. 17] at 4:15–16.) Indeed, it is axiomatic that only a party to a

19-cv-556-W (LL)

contract may be sued for its breach. However, CPC alleges facts which suggest the possibility of piercing the corporate veil to hold FDC liable for its subsidiary, FDMS.

Under New York law, a corporate parent is not automatically liable for the acts of its wholly owned subsidiary. See Beck v. CONRAIL, 394 F. Supp. 2d 632, 637 (S.D.N.Y. 2005). However, a court may pierce the corporate veil and hold two corporations to constitute a single legal unit where there was an exercise of complete dominion that led to inequity, malfeasance, or fraud. IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 403–04 (S.D.N.Y. 2009).

FDMS alleges that: (1) FDC owns 100% of FDMS; (2) FDC and FDMS share offices and employees"; (3) FDMS is a mere shell for FDC; and (4) at certain points FDC acted unilaterally without FDMS with respect to CPC. (*SAC* ¶ 2.) FDC argues these allegations are mere legal conclusions insufficient to survive a motion to dismiss. However, not only has CPC alleged that FDC and FDMS almost completely overlap with respect to ownership and offices, but also that FDC operated on behalf of FDMS with respect to CPC. Taken as true, which the Court is obliged to do at this stage, that is a fact which pushes us into the realm wherein FDC plausibly exercised complete domination over FDMS. FDC's request to be dismissed from the SAC is **DENIED**.


### Q.   Wells Fargo

Wells Fargo makes a short, general argument that, in addition to all the reasons set forth by FDMS, it should be dismissed because the SAC contains conclusory allegations insufficient to state a claim against it. (*Wells Fargo MTD* [Doc. 21] at 5:1–3.) However, Wells Fargo is at least plausibly implicated in the conspiracy claim, which survives due to the remainder of predicate tort claims. CPC alleges FDMS and Wells Fargo developed a scheme whereby FDMS assigned Wells Fargo to the agreement in order to aid and abet FDMS's attempts "to defraud CPC." (*SAC* ¶ 141.)  In return, CPC claims Wells Fargo was able to "collect exorbitant fees." (*Id.*)  In the Court's estimation, CPC has plead an

actionable claim and Wells Fargo's request to be dismissed from the SAC is therefore **DENIED**.

### R. CPC will be given a final opportunity to amend the complaint

The remaining issue is whether leave to amend should be granted. Courts "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 972 (9th Cir. 2010) (quoting Thinket Ink Info. Res., Inc. v. Sun Microsystmes, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004)).

FDMS contends that CPC has had three attempts at preparing a complaint, and thus presumably should not be given leave to amend. But one of those "attempts" was a state form complaint that was amended before the Court had evaluated the substantive sufficiency of the complaint. At this juncture, the Court cannot conclude that amendment would be futile. Accordingly, CPC will be given a final opportunity to amend its SAC.

*//*

*//*

19-cv-556-W (LL)

## IV.   CONCLUSION AND ORDER

For the foregoing reasons:

   i.   Defendant FDC's motion to dismiss is **DENIED**.  [Doc. 17.]

   ii.   Defendants FDMS and FDC's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  [Doc. 18.]

   iii.   Defendant Wells Fargo's motion to dismiss is **DENIED**.  [Doc. 21.]

   iv.   Plaintiff CPC will have leave to amend the SAC.  The third amended complaint must be filed, if at all, by **<u>Friday, January 10, 2020</u>**.


**IT IS SO ORDERED.**


Dated:  December 20, 2019

_____

Hon. Thomas J. Whelan
United States District Judge